### Robb and others vs. Stevens and others.

A general rule of equity is, that partnership property shall be applied to the payment of partnership debts; and individual property of the partners, to the payment of individual debts of the partners.

The rule, however, is for the benefit of partners, and those who represent them or claim title through the medium of one of the partners, as by execution, death, assignment, or bankruptcy.

Creditors of a partnership have no specific lien upon the partnership property for the payment of their debts. The partnership property and the individual property of each partner is liable for the payment of such debts, if it can be reached in due course of law.

A creditor of a partnership firm who has obtained judgment against

Feb. 1840.

Robb and
others
. v.
Stevens and
others.

such firm, after a sale by one partner to the other, cannot, before execution issued, sustain a bill for the partnership property, and have it applied to the payment of the partnership debts. He must issue an execution upon his judgment, and file the ordinary creditor's bill.

One partner who has purchased of his co-partners their interest in the firm, holds, after such purchase, the property as his individual property. The selling partners may file a bill to enforce the performance of the agreement of sale, if the purchasing partners agreed to indemnify them against the partnership debts ; but creditors of the firm, without the aid of the retiring partners, cannot, by bill, in equity compel an application of the partnership property to the payment of the partnership debts.

Such creditors must resort to the ordinary mode of collecting their debts by judgment, execution, and creditor's bills.

THE bill in this case charges that the defendants, John Cronkhite and Barney M. Springsteen, being in copartnership as traders, became indebted in the year 1836, to the complainants for goods purchased of them ; and on the 4th of Feb. 1837, executed a bond and warrant of attorney to the complainants for the amount of said debt, upon which a judgment was entered Feb. 9, 1837. The firm of Cronkhite & Springsteen had two stores, one at Pekin and one at Lockport. Some time in 1836, it is alleged that they sold out the store in Pekin, and took real estate and notes in payment, which notes were transferred to the defendant Spalding, as security for Cronkhite's individnal debt. Afterwards, and on 13th Nov. 1836, Springsteen sold and conveyed all his interest in the partnership property and effects to Cronkhite, who was to indemnify Springsteen against the copartnership debts. On the 1st Dec. 1836, Cronkhite made an assignment of all his property, including the above co-partnership property, to Stevens and others, as trustees for the payment of his debts. The trust was for the payment of the individual debts of Cronkhite and the partnership debts of Cronkhite

and Springsteen; but the partnership debts were not preferred or to be paid first, but some of the individual debts of Cronkhite were to be among the first paid, and in preference to some of the partnership debts. There were judgments and executions against Cronkhite, and Cronkhite & Springsteen, upon some of which the property was sold; and it is alleged to have been sold on executions for Cronkhite's individual debt, and a part of the proceeds were now in the hands of the sheriff. These executions were in the hands of the sheriff before, but the sale made after the assignment from Springsteen to Cronkhite, and that such assignment was subject to the levy of such executions, and at that time the co-partnership was insolvent. The complainants, for themselves and on behalf of such of the partnership creditors as shall choose to come in, file their bill to have the proceeds of the co-partnership property applied to the payment of the debt of the complainant and of the other co-partnership creditors. The complainants have not issued any execution upon their judgment at law.

*A. C. Bradley*, for complainants.

*R. H. Stevens*, for defendants.

THE VICE CHANCELLOR. It is a general rule that co-partnership property shall be in the first place applied to the payment of the debts of the partnership, before it can be applied to the payment of the separate debt of the individual partner. But it would seem, in most cases at least, that this rule is adopted for the protection of the other partners, to prevent the funds accumulated by their joint means and joint credit, being misapplied or diverted to the payment

of the individual debt of one of the partners. Thus, if an execution issued against an individual partner, is levied upon the partnership effects, and they could all be sold under it, the result would be that the property of the solvent partner would be sacrificed to pay the debt of the embarrassed one; or even if the share of the debtor partner in such goods, could be sold under such an execution, and there were any partnership debts, the result would be that the fund which the other partner had a right to insist should go to the payment of the partnership debts, would be wrongfully applied, and to his injury, if it should be permitted to go to pay the individual debts of the other. As the partner who was not sued, has in such case a right for his own benefit to insist that the goods which were purchased upon their joint credit, should be applied first to pay their joint debts, otherwise the unembarrassed partner would be compelled to pay the partnership debts, while the fund out of which such debts should be paid, would have been diverted to the payment of the individual debt of the other partner. This the law will not permit; and hence the rule has been adopted that an execution issuing in such cases against an individual partner, can reach only that partner's share in the surplus of the partnership property, after the partnership debts shall have been paid. So much the separate partner creditor has a right to have upon his execution; and so much he can have without injuring the rights of the other partner. Similar principles are applicable to the cases of the death or bankruptcy of one of the partners, and for similar and equally just reasons. Most of the cases to which I have been cited on the argument, have arisen out of the relation of partners

as they were affected by execution, death, or bank-

ruptcy. The rule seems to me to be, generally at least, for the benefit of the partner who might be otherwise injured, and only incidentally for the benefit of creditors and others, as they can reach the partnership property through such partner. I do not understand that creditors of a partnership have any specific lien upon the partnership effects for the payment of their debts. They hold the partners jointly, personally responsible to them, and can collect their debt out of the partnership property and also the individual property of the partners.

One partner cannot assign the partnership property for the payment of his individual debts, as that would work a wrong to the other partner, who has a right to be relieved of the partnership debts to the extent of the partnership means, and to object to such means being diverted to the payment of an individual debt. And even when one partner sells out the partnership effects to the other, who is to pay off the debts of the firm, and indemnify the retiring partner against such debts, it has been he d if he, being insolvent, threatens to dispose of the property for his own individual use, and leave the partnership debts unpaid, that a bill will lie in favor of the retiring partner to restrain him, and a receiver appointed to dispose of the property according to the agreement. This was held in the case of Deveau *vs.* Fowler, 2 Paige, 400; and the opinion of Chancellor Jones is there quoted, that such sale from one partner to the other, did not destroy the lien or equity which existed in favor of each on the dissolution, to have the partnership property applied to the payment of the partnership debts. This is put upon the ground of an equity in favor of

the partner; and doubtless the reason why the court interfered in such cases, was to save the retiring partner, who, in case of such misapplication of the effects by the other partner, contrary to his agreement, would have to pay the partnership debts; and the other partner, being insolvent, could not respond upon his agreement or bond of indemnity. It is a clear case of equitable jurisdiction. But in such case, could a simple contract creditor of the partnership have obtained any such relief in this court?

It is true, the Chancellor in this last case says that it is a well settled principle of equity, that the creditors of a partnership concern have an equitable right to payment out of the partnership effects, in preference to the creditors of the individual partners. The above remark, I apprehend, is rather the effect of the disposition made of partnership property, when it comes before the cognizance of court, than any well settled rule of equity in favor of partnership creditors. The result of the equity in favor of the partner when partnership property comes in certain shapes under the jurisdiction of this court, is to give partnership creditors a preference; but this, I apprehend, is not generally the result of any equity in favor of the partnership creditors, but rather in favor of the partner. In marshalling effects when there are co-partnership and individual debts, the co-partnership debts are to be paid out of the partnership fund, and individual debts out of the individual property; but it seems to me this rule results, generally at least, from the equities of the partners themselves, and to make them equal as between themselves, and arises from the rule that the interest of each partner in the fund, is what remains to his share after the payment of the

partnership debts.   This principle seems to have the countenance of the Chancellor in his decisions, 3 Paige, 517, and 5 Paige, 30 ; and in those cases he seems to sanction the principle that the creditors of a partnership come in through the medium of the partner and his equities.   See also the case in 7 Paige, 26, (Hutchinson *vs.* Smith,) and the opinion of the Vice Chancellor reported in that case.

In the case before the court, the sale from the defendant Springsteen to his partner, Cronkhite, of the partnership effects, must be deemed to have worked a dissolution of the partnership, subject, however, to the right of Springsteen, the retiring partner, to have the partnership property applied to the payment of the partnership debts, if the continuing partner is insolvent, and is about to apply such property to the payment of his individual debts.   The retiring partner, however, makes no complaint.   This bill is filed by judgment creditors of the partnership, before issuing execution.

They allege that the Pekin store was sold by the partnership before its dissolution, and in fraud of the rights of the complainants and other creditors of the co-partnership.   But it does not appear from the bill positively, that the co-partnership was at all indebted to the complainants before the sale of the Pekin store. It is alleged that the goods were sold by the complainants to the co-partnership, in the year 1836; and that the Pekin store was sold in July, August, &c. of the same year.   This may all be true, and yet the co-partnership not be at all indebted to the complainants at the time of the sale of that store; and if they were not, the complainants certainly have no right to inquire into that transaction in this way.

Mar. 1840.

Robb and others
v.
Stevens and others.

Again: the complainants allege that the whole interest in the Lockport store was sold under execution, for private debts of the defendant Cronkhite. If this is so, it is clear that the purchasers would take nothing under such sale, except Cronhite's interest in the surplus after the partnership debts were paid; and the complainants could have put themselves in a situation to test this question, by issuing an execution upon their judgment; and in case of its return unsatisfied, ascertain the facts by filing a common creditor's bill. This they have not chosen to do; and I hold it hardly competent for them to inquire into it, without having first exhausted their remedy at law.

The question which seems to be presented here is, whether partnership creditors standing in the situation of the complainants, can file a bill of this character, before issuing an execution upon their judgment. It can be done only upon one of two grounds—either that the partnership creditors have a species of equitable lien upon the partnership fund for the payment of their debts; or that the assignment from Springsteen to Cronkhite was made in fraud of the partnership creditors. The previous reasoning disposes of the first ground. There are some cases in this State, when simple contract creditors of a partnership may file a bill for the rateable distribution of the partnership property among the partnership creditors. But those arise under our statute in relation to special partners, which assimilates such partnerships in some manner, to corporations, and provides for the distribution of their assets in case of their insolvency. Such is the case of Innes vs. Lansing, 7 Paige, 584. This, how-

ever, is not the rule in relation to general part-
nerships. They have the same control over their
property as individuals; and, as has been before re-
marked, partnership creditors can, generally, only
reach partnership property through the medium of
the equity of the partners.

The assignment of one partner of his interest in
the partnership property to the other partner, and
thereby working a dissolution, is not generally a mat-
ter to which the partnership creditors can rightfully
object. Neither their rights nor their remedies are
impaired. There may be cases where the *bona fides*
of the transaction would become a legitimate ques-
tion. It is charged here as fraudulent; but the bill
does not require an answer on oath. There has been
no proof of the fraud, and no proofs have been taken
which have been submitted to the court, except a
stipulation admitting some of the papers, which has
been a subject of embarrassment to me in examining
this case.

The complainants' bill is dismissed with costs,
without prejudice to their right to file another bill.