( Decided February 24th, 1859. )

---

# J. S. GRIFFITH, and others, *vs.* JOHN BUCK.

An agreement between a retiring and a continuing partner, made upon dissolution, that the former should be *released* from the concern, is equivalent to a *promise* by the latter *to pay the debts* of the firm.

In case of a voluntary dissolution, the partnership effects may be legally transferred *bona fide* for a valuable consideration, either to one or more of the partners or to strangers, and though the consideration, in whole or in part, of such transfer, may be that the partners taking the property shall pay all or a particular part of the debts of the firm, this will not aid the creditors.

Where, upon a voluntary dissolution, one partner *bona fide* assigns the partnership property for a valuable consideration, which includes a covenant or promise by the partner taking the assignment *to pay the debts* of the firm, or that the retiring partner shall be *released* from his liabilities for the partnership, he has not, by virtue of such covenant or agreement, any *lien* on the assigned property for the discharge of those debts.

Griffith, *et al.*, *vs.* Buck.

APPEAL from the Circuit court for Baltimore city.

This appeal is taken by the appellants, defendants below, from a decree passed upon a bill filed against them and Felix V. Durst, by the appellee. The allegations of the bill and answer, and the proceedings and testimony in the case, are sufficiently stated in the opinion of this court.

The decree appealed from, which was passed by the court below, (KREBS, J.,) on the 1st of September 1855, directs the property named in the proceedings, after paying the expenses and receiver's commissions, and costs of these proceedings, to be applied in the first place to or towards the payment of the sum of $500, advanced by the said Griffith, Michael & Brother, at the time of the execution of the bill of sale named in these proceedings, with interest from the time such advance was made, and then, that the surplus, if any, be applied to or towards the payment of the creditors of the firm of Durst and Buck. It is further ordered, that notice be given by the receiver to the creditors of said firm of Durst and Buck, to file their claims properly authenticated with the clerk of this court, on or before the first day of November next, preparatory to a distribution of assets, by publication in some one of the daily papers of the city of Baltimore, once a week for four successive weeks.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Thomas S. Alexander* for the appellants:

1st. The assignment by Durst to the appellants, being made with full notice to Buck, and for satisfaction of a debt due them by Durst and Buck, was valid as against Buck, especially as the transaction was free from all imputation of fraud, and the consideration paid is not shown or averred to be inadequate. The appellants, therefore, are *bona fide* purchasers for a valuable consideration, paid before or at the time the bill of sale to them was executed, of all the interest which Durst could sell in this property.

2nd. Durst, as settling partner, under an agreement for dis-

solution, simply at the risk and for account of both partners, had the right to sell the whole or any part of the joint stock, in satisfaction of any debt or debts due by the partnership.

3rd. There is no proof of notice to the appellants, of the alleged terms of dissolution, that Durst was to indemnify Buck against the debts of the firm, or of the existence of any such debts. But if it is assumed that the agreement for dissolution was, as is represented, and that the appellants had notice thereof, and of the existence of other partnership debts, it is still insisted, that under such agreement, Durst became absolute owner of the goods as against Buck, and could rightfully sell, and the appellants, as creditors of Durst and Buck, could rightfully purchase the stock or any part of the stock, in satisfaction of the debts due from the partnership to the appellants. It is well settled, that one partner may assign his interest in the partnership effects, either to a third party or to his co-partner, provided he does it in good faith, and where, upon dissolution, he makes such an assignment to a settling partner, with the agreement, that such partner shall *pay the debts* of the firm or *release him* from the concern, such agreement cannot have the effect of continuing his *lien* upon the assigned partnership funds for the payment of partnership debts. *Story on Part.*, secs. 358, 359. 2 *Md. Rep.*, 16, *Glenn vs. Gill.* The cases cited by the learned Judge of the court below, in his opinion, of *Robb vs. Stevens*, 1 *Clarke*, 192, and *Deveau vs. Fowler*, 2 *Paige*, 400, do not bear out the position which they were cited to sustain.

4th. It is not shown there were any other debts due by Durst and Buck, nor is it shown or alleged that the appellants are insolvent, or in doubtful circumstances. It is conceded the appellants were entitled to an assignment, if not absolute, at the least as a security for payment of their note for $500, and any other debt due them from Durst and Buck. No injury could have resulted to the appellee if the bill had not been filed. The appellants were partnership creditors to the amount of $2000. The partnership funds have been applied to the partnership debts, and it matters not to Buck

whether he is left in debt to the appellants or to other partner-ship creditors, if any such there are.

The appellee had, therefore, no equity to an injunction or receiver, or in any manner to disturb the appellants in the en-joyment or disposition of the property assigned to them.   If he had any remedy whatever, it was to an account or order to enforce the application of any surplus proceeds or assets, which might remain in hand after satisfaction of the claims of the appellants against the same.

*Orville Horwitz* for the appellee, argued:

1st.  That the bill of sale is defective and invalid, for want of a sufficient affidavit, under the act of 1846, ch. 271.

2nd.  That the  consideration named in  the bill of sale  has never been  paid, as thereby agreed, and that until such pay-ment, the grantees had no right to interfere with  the effects transferred by that instrument.

3rd.  That the appellants perpetrated a fraud on  Buck, by concealing from him, at the time of the formation of  the part-nership between him and Durst, facts within their knowledge which  they should have  disclosed, and the concealment of which facts  extinguishes all  their claims against the  effects of Durst and Buck.   The contract of partnership was drawn by Michael, one of the appellants, and attested by him.   It pro-vides that Buck shall be a co-partner, four  or five months be-fore he went into the concern.   At this time the indebtedness of Durst and  Appler to the appellants existed, and  not one word was said about this debt, and Buck is made to pay one-half of the entire value of the stock, upon which there was this heavy lien, which would  have swamped the whole con-cern, but about which nothing whatever was said.

4th.  That the effects in the hands of Durst, were not re-sponsible for the debts of Durst and Appler.

5th.  That the debts of Durst and Buck, are a lien on the effects of that firm, by virtue of the agreement of dissolution, and that this agreement was known to the appellants; *(Story on Parl.,* secs. 372, 373; 1  *Clarke,* 195, *Robb, et al., vs. Ste-vens;* 2  *Paige,* 400, *Deveau vs. Fowler;)* and that the ap-

pellee had a right, therefore, to interfere, by a bill for an injunction.   10 *Md. Rep.*, 466, *Rose vs. Bevan.*

6th. That Durst had no power to assign these effects for the payment of a debt of Durst and Appler, or to apply the same to the payment of any debt due by Durst and Appler or Durst, until after the payment of the debts of Durst and Buck.

7th. That it is shown by the proof and admissions in the case, that other debts are due by Durst and Buck, and that the only effect of the decree is, to apply the proceeds of the funds to the payment of other debts, after satisfaction of the appellants' claim.

ECCLESTON, J., delivered the opinion of this court.

From the bill and other proceedings in this cause, it appears that the defendant, Felix V. Durst, was at one time a member of the firm of Durst & Appler, carrying on the business of paper hangers in Baltimore. That firm was dissolved, by mutual consent, on the 13th of May 1854, Appler retiring from, and Durst retaining, the concern, he being solely and only authorized to settle the affairs of the firm. On the same day, Durst and John Edward Buck, the complainant, entered into articles of co-partnership; the business to be carried on in the same warehouse or store, which had been occupied by the preceding firm. Among other things it was agreed, that this second co-partnership should commence and continue from the previous 28th of January 1854. The stock, good will and fixtures, being valued at the sum of $2607.09, the said Buck agreed to pay Durst $1303.54½, for one-half interest in the said concern; $1000 of said sum to be paid in cash, and a note for the balance, payable in four weeks, to be given. The bill alleges, that Buck paid $818, in part of the $1000, and Durst admits the same.

On the 30th of August 1854, Durst and Buck each, signed a written agreement, dissolving their co-partnership by mutual consent.

On the 1st day of September, in the same year, Buck executed the following instrument, to wit:

"For and in consideration of five hundred dollars paid me,

Griffith, *et al.*, *vs.* Buck.

I have on this first day of September, eighteen hundred and fifty-four, sold to Felix V. Durst, all my interest and claim in the concern of Durst & Buck, doing business at the store No. 110, West Baltimore street.      (Seal.) J. E. BUCK."

"Witness—*J. H. Vogt.*"

Upon the same first day of September, Durst executed a bill of sale in favor of G. S. Griffith, Michael & Bro., which firm consists of the defendants, Goldsborough S. Griffith, Henry Michael and Alexander Michael. The consideration stated is $2579.25, and the instrument on its face is an absolute bill of sale for all F. V. Durst's "right, claim and interest, in and to the stock of paper hangings, upholstering goods, window shades, venetian and various other kinds of blinds, and every article manufactured, or materials for manufacturing, all books of accounts, debts and notes due him, or the firm of Durst & Buck, also including all fixtures, tools, &c., contained in store, cellar and brick shop, of warehouse No. 110, Baltimore street."

Upon the dissolution, Buck withdrew and Durst remained. The day after the date of the bill of sale, the grantees named therein, took possession of the store and goods, &c. On the fourteenth of the same month, the complainant filed this bill, in which it is alleged, that the terms of the dissolution between Durst and Buck, provided that the former was to pay the latter or secure to him the sum of $818, brought by him into the concern, and the further sum of $200, for his profits, and that Durst should pay all the debts which had been contracted by said firm, out of the stock of goods on hand and debts due to the firm, and take the said stock and debts for said purpose, and for his part of the partnership effects. That for the purpose of carrying out this agreement of dissolution, Durst obtained the note of G. S. Griffith, Michael & Bro., for $500; and passed the same to Buck, payable six months after date, which note was obtained on the 1st of September 1854, in addition to which Buck also received from Durst his two promissory notes, one for $150, and the other for $250, payable at 30 days and four months respectively, he agreeing to pay Buck the further sum of one hundred dollars in cash. The bill also

alleges, that immediately after passing the note for $500, G. S. Griffith proposed that Durst should secure him against loss by reason of giving the note, by executing a mortgage upon the said stock of goods. But desiring to carry out his contract of dissolution with Buck, (with the terms of which contract Griffith was fully acquainted at the time of making the same,) Durst represented to Griffith, that the said stock of goods was responsible for the debts of the firm, and that he could not therefore encumber the same; that Griffith thereupon stated to Durst, that he should go ahead with the business, and that he, Griffith, would see that the said debts were paid, and thereupon Durst agreed to execute a mortgage; that he procured a mortgage bill of sale to be prepared, and presented it to Griffith, who objected to it because there was an error in the names, and he then undertook to have an instrument properly prepared; which when written was presented to Durst, to be executed by him, and without reading it he did execute the same, supposing it to be a mortgage, and did not know to the contrary until the next day, when he discovered it to be an absolute bill of sale.

The bill alleges, that this instrument was fraudulent as well against Durst as against Buck.

The prayer of the bill is, that J. S. Griffith, H. Michael and A. Michael, shall be restrained by injunction from selling, disposing of, or in any way interfering with the said stock of goods, or from collecting the debts due the firm of Durst & Buck; that a receiver should be appointed to take charge of the same; that a decree should be passed setting aside the said bill of sale; and that such further and other relief might be granted as the court might deem proper.

An injunction was issued and a receiver appointed, the same day on which the bill was filed.

After the answers came in, a commission issued, and considerable testimony was taken under it.

The proof admits of no doubt, that the promissory note for $500, given by G. S. Griffith, Michael & Bro., and passed by Durst to Buck, constituted part of the consideration mentioned in the bill of sale. There is also strong evidence on

Griffith, *et al.*, *vs.* Buck.

the part of the grantees in said instrument, that the remaining portion of the consideration, consisted of an account due to them which Durst examined and said was correct, much the larger part thereof being due by Durst and Buck. We believe from the evidence, that Durst knew the contents of the bill of sale before it was executed; that Buck was acquainted with the whole arrangement; that after its completion he was satisfied with it, and that whilst it was in progress, both Durst and Buck were anxious to have it carried into effect.

We do not consider it necessary to make a more minute examination of the evidence, in reference to the *bona fides* or the validity of the bill of sale. There is no appeal on the part of the complainant, and we agree to the correctness of that portion of the opinion of the judge below, in which he says: "The bill filed in this case, seeks relief upon the ground, that this bill of sale was not intended or understood by the said Durst to be an absolute bill of sale, but only an assignment by way of mortgage. I do not think that the evidence sustains this position, and cannot therefore grant any relief on this ground." After this the judge says, "relief is also sought upon the ground, that the complainant Buck, is entitled to have the debts due by the firm of Durst & Buck, paid out of the partnership effects of that firm, transferred as aforesaid to said Griffith, Michael & Brother. I have no doubt, from what this case discloses, that it was the intention and agreement of the parties, that the note for $500, loaned by Griffith, Michael & Brother to Durst, to enable him to pay in part, to Buck, the consideration that he Durst had promised to pay Buck, upon the dissolution of their partnership, for his interest in the effects of the firm, should be secured by a transfer, of some kind, of the partnership property of that firm, taken by Durst under the terms of the dissolution, and I am of opinion that these effects should be applied to that purpose." And the balance of these effects, the judge holds, are to be applied to the payment of the debts due from the firm of Durst & Buck. And a decree was passed in accordance with these views.

It will be seen, that neither the opinion nor the decree impugns

the *bona fides* of the transfer of Buck's interest in the effects of the firm to his partner Durst.   On the contrary, the validity of the transfer is conceded, when those effects are made applicable, in the first place, to the payment of the note of $500, with interest.   Which application is likewise a recognition of the validity of the bill of sale, qualified, however, as to the extent of its operation as a transfer or conveyance of the property included therein, by what the court considered to be a lien of Buck upon the same, for the payment of the debts of Durst & Buck, under and by virtue of the terms of dissolution and sale by Buck to Durst.

No part of this decree can be objected to by the complainant, he not having appealed.   The defendants, G. S. Griffith, Henry and Alexander Michael, are the only appellants; and they, of course, do not object to any portion of the ruling of the court, which is consistent with their own views.   They do, however, object to the granting of an injunction, the appointment of a receiver, and to that portion of the decree which directs any part of the proceeds of the property mentioned in the proceedings, shall be distributed among or applied toward the payment of the creditors of the firm of Durst & Buck.

In this state of the case, it becomes necessary to ascertain whether, according to the terms of the dissolution between Durst and Buck, and the sale or transfer of the interest of the latter, in the joint effects, to the former, the latter retained a lien, or *quasi* lien, upon the partnership property or effects, for the payment of the joint debts of the firm.

The judge thought that such a lien was retained by Buck; that G. S. Griffith, Michael & Brother knew it; that they also knew the debts of Durst & Buck were not paid; and that Durst took the effects of the concern, under an arrangement to pay the debts of the firm; and the grantees in the bill of sale having taken these effects, with such knowledge, they were, with regard to them, in no better condition than Durst was before he gave the bill of sale.   And after considering the debts of Durst & Buck, as liens upon these effects, in the hands of Durst, prior to the execution of the bill of sale, the

Griffith, *et al.*, *vs.* Buck.

judge then says, these debts "are equally, under the circumstances of this case, a lien upon them in the hands of Griffith, Michael & Brother."

After stating what, according to the terms of the dissolution, was to be paid to Buck by Durst, the bill says, that he agreed "to pay all the debts which had been contracted by the firm of Durst & Buck, out of the stock of goods on hand, and debts due the firm, and take the said stock and debts for said purpose, and for his part of the partnership effects."

G. S. Griffith, H. Michael and A. Michael, in their answer, "deny that it was ever intimated to them, that the stock proposed to be sold, was responsible for the debts of said Durst & Buck, and that said Durst could not encumber it." They also aver that they solemnly repudiated all responsibility for the debts and engagements of said firm; that Buck presented to them a paper, to be executed by them, purporting to bind them for said debts, but they utterly and wholly declined to have any thing to do with it.

Durst filed his answer as a defendant. He was likewise examined as a witness, under an order of the court allowing his examination.

The only evidence which professes to state the particular terms of the agreement, by which Durst became bound to discharge or pay the debts of Durst & Buck, is derived from Durst and J. H. Vogt. Seeing, however, that the statements made by Durst, in regard to several matters relating to this case, have been so flatly contradicted by other witnesses, and in some respects, are so unreasonable and improbable, we cannot place confidence in his evidence or statement on the present subject. We must therefore rely, *mainly,* upon the evidence given by Vogt.

This witness wrote the bill of sale which was executed. His testimony is, that after preparing the instrument, he read it to Durst, who was anxious to have it executed, and he examined it himself, in his own hands. Witness exhibited to Durst an account of his indebtedness, which is the same amount as mentioned in the bill of sale. Durst also looked over the books. Buck was not present. "Witness was pres-

ent upon one occasion, when Mr. Griffith, Mr. Buck, the
Messrs. Michael and Mr. Durst, were present, when it was sta-
ted, that Mr. Griffith was to give Durst a note for $500, in
order to purchase Buck's interest, and that Buck *was to be re-
leased from the concern by Durst.* Don't remember whether
any thing was said about bill of sale at this time. The bill
of sale was prepared half an hour after this conversation. At
another interview Mr. Buck came in with a paper in his hand.
The contents of the paper, as stated by Buck, were, that Mr.
Griffith was to assume the debts of the firm; Mr. Griffith re-
fused to agree to this, and said that he had enough to do to
pay his own debts, without paying those of other people. Mr.
Buck wished to withdraw from the firm, wanted Mr. Griffith
or the firm to buy him out. Mr. Buck frequently came up,
but don't recollect what happened at the interviews.''

Upon cross-examination, Vogt says: "At the conversation
above alluded to, as having taken place half an hour before
the execution of the bill of sale, and at which Messrs. Griffith,
Buck, Durst and Michael, were present, it was understood
that Mr. Buck was to receive Griffith's note for $500, from
Durst, and he (Durst,) was to get it from Griffith. Buck was
to be released out of the concern by Griffith, Michael and
Brother. He was to be released of his share, was to withdraw
out of the concern entirely, and Durst was to have the con-
cern altogether. Buck by the paper before mentioned, wanted
Griffith to assume the liabilities of the firm, which Griffith re-
fused to do.''

Whilst considering the question as to the continuance of
Buck's lien after the dissolution, the judge below does not
once refer to the evidence of Durst, but relies upon that of
Vogt; which he holds quite sufficient to establish, not only the
continued existence of the lien upon the effects of the firm,
but that G. S. Griffith, Michael & Brother, knew of its ex-
istence when they took the bill of sale.

We do not understand the judge as holding that the evi-
dence proves an agreement, which, *in express terms*, provided
that Durst should pay the debts *out of the effects of the firm*,
or that there should be *a lien upon those effects* for the pay-

ment of those debts; but that the proof shows an agreement, that Durst should pay the debts, or that Buck should be released from the concern by Durst; and that such an agreement created or rather continued Buck's lien upon the former partnership effects.

The opinion of the judge states, that "an assignment from one partner of all his interest in the partnership property, is valid and takes effect, provided it is made *bona fide*, and the consideration on which it is made is performed." After this it is said: "When the partner, upon a dissolution of the firm, taking such assignment, agrees to pay as a consideration therefor, the debts of the firm, the assigning partner has a lien on the effects until they are paid." And in support of this latter position, reference is made to *Robb & others, vs. Stevens & others*, 1 *Clarke*, 195, and *Deveau vs. Fowler*, 2 *Paige*, 400. Immediately following the statement of this principle, the opinion proceeds thus, "Buck then, notwithstanding the assignment, retained an equitable lien upon these partnership effects, to secure the payment of the debts due by Durst & Buck. This lien, of course, would not avail against a *bona fide* purchaser without notice of such an agreement, or who did not purchase under circumstances that should have put him on the inquiry." The grantees in the bill of sale are held to have notice, and that they therefore took the effects subject to the lien of Buck.

Although, according to the legal principle as above stated, a promise to pay the debts, by the partner taking the assignment, will preserve or continue the lien of the retiring partner, still the judge lays much stress upon the evidence, which he thinks proves that Buck was to be released out of the concern.

Admitting the agreement was, that Buck should be released out of or from the concern, can such an agreement have the effect to preserve a lien in favor of the retiring partner?

In *Dorsey vs. Dashiell*, 1 *Md. Rep.*, 198, this court had occasion to construe a covenant, in which, Dorsey covenanted and agreed that he would *release* Dashiell, his heirs and assigns, of and from all, and all manner of debts, liabilities and responsibilities, of the partnership concern. And this was a

15      v. 13.

covenant between a remaining and a retiring partner. There the court say: "In truth, an engagement to release, in such a case as this, is in effect a promise to pay; for it is only by paying, or what is equivalent to it, by satisfying the creditors for their claims, that the covenantor could release according to his contract." So in the present case Durst could not, nor could any one else except the creditors, release Buck in any other way than by paying the debts of the firm. Giving him a lien upon the partnership effects would not release him; for he would still be responsible. We therefore do not perceive, why an agreement, that Buck should be released from or out of the concern, should have more effect in retaining his lien upon the partnership effects, than a promise or agreement by Durst to pay the debts, would have.

Believing that, in relation to continuing the lien of a retiring partner, after the assignment of the partnership effects, there is no material difference between the effect of a promise to release him, and that of a promise to pay the debts of the firm, we will now inquire, what is the effect of the latter promise.

According to the decision below, it secures to the retiring partner a lien upon the effects of the firm, until its debts are paid. If, when critically examined, the two New York cases can be considered as fully sustaining the doctrine for which they have been cited, we respectfully decline yielding our assent to their correctness.

In our opinion, it has been held, by good authority, that in cases of voluntary dissolution the partnership effects may be legally transferred, *bona fide*, for a valuable consideration, either to one or more of the partners, or to strangers. *Glenn vs. Gill*, 2 *Md. Rep.*, 16. And although the whole, or part of the consideration of the transfer, may be, that the partners, taking the property, shall pay the whole, or a particular part of the debts of the partnership, that will not aid the creditors. And the reason assigned why it will not, is, that in such a case, the retiring partner, who so transfers his share, has no lien on the property for the discharge of those debts; for by his voluntary transfer of the same, he has parted with it, and

trusted to the personal security and personal contract of the other partners. *Story on Part.*, secs. 358 359, the notes and authorities there cited. *Ex-parte Ruffin*, 6 *Ves.*, 119, 126, 127. *Ex-parte Fell*, 10 *Ves.*, 347. *Ex-parte Williams*, 11 *Ves.*, 3, 5 to 8. *Gow on Part.*, *ch.* 5, *sec.* 2. *Collyer on Part.*, *B.* 4, *ch.* 2, particularly sections 894, 895, pages 790 to 792, *(Ed. of* 1853.) See, also, as to the *bona fides* of an assignment, *Collyer on Part.*, *Book* 4, *ch.* 2, *secs.* 902 *and* 903, *page* 798.

In *Ex-parte Ruffin*, *Ex-parte Fell*, and *Ex-parte Williams*, partnership effects were transferred by a retiring to a remaining partner; the latter having covenanted or contracted, in two of the cases, to pay the partnership debts, and to indemnify the retiring partner against them; and in the third case, the contract was, that the debts should be paid and discharged by the remaining partner. It was held in each case, that the property became the separate property of the partner taking the transfer, and that there was no lien upon the same, for the payment of the debts in favor of the retiring partner.

In *Ex-parte Ruffin*, Lord Eldon said: "The assignment was not made subject to the payment of the debts, but in consideration of a covenant, leaving no duty upon the property, but attaching a personal obligation upon the assignee to pay the debts.

In *Ex-parte Fell*, the retiring partner petitioned to have the specific stock and debts of the old partnership applied in satisfaction of the creditors of that partnership, in preference to the creditors of the new firm. Expressly, upon the authority of *Ex-parte Ruffin* and *Ex-parte Snow*, the petition was dismissed. The decision, therefore, was, that the property passed by the transfer, without being subject to any lien of the assigning partner, for the payment of the old firm's debts. In conclusion, the Lord Chancellor says: "It will be very easy to avoid this, upon the retirement of a partner, by assigning all the effects upon trust to pay the debts."

After a patient examination of the authorities, we think, that when, upon a voluntary dissolution, one partner makes a *bona fide* transfer of partnership property, for a valuable considera-

tion, which includes a covenant or promise by the partner taking the assignment, to pay the debts of the firm, or that the retiring partner shall be released from his liabilities for the partnership, he has not by virtue of such a covenant or agreement, any lien on the assigned property, for the discharge of those debts. In saying this, however, we are not to be understood as intimating, that a retiring partner may not assign partnership effects, upon such terms as to secure for him a lien upon those effects for the debts of the firm.

It has been intimated already, that this appeal does not present any question as to the *bona fides* of the assignment from Buck to Durst, but submits the inquiry, whether, by the terms of the assignment, Buck was entitled to a lien upon the effects of the firm?

The written agreement of dissolution makes no mention of how the partnership effects were disposed of, or in what manner the debts of the firm were to be paid. This agreement is dated the 30th of August 1854. On the 1st day of the following month, Buck executed a written instrument, under seal, by which, for the consideration of $500, paid him, he *sold* "all his interest and claim in the concern of Durst & Buck" to Durst. This instrument contains no provision whatever, in relation to the payment of the liabilities of the firm.

There is no regular exception to any part of the evidence.

In the state of the record, and from the character and nature of the evidence before us, we must look to the testimony given by Vogt, to ascertain what was the nature of the agreement, as to how the debts of Durst & Buck should be discharged, and whether that agreement reserved to Buck a lien on account of those debts, upon the effects assigned by him to Durst.

Vogt's testimony shows that Buck was to be released from the debts of the concern. An agreement to *release*, in such a case as this, can have no greater effect than a contract to pay the debts. And from our view of the authorities, neither one nor the other could, *per se*, secure a lien in favor of Buck, upon the effects assigned by him to Durst.

The injunction will be dissolved, the appointment of the re-

ceiver reversed, and so much of the decree reversed as directs a portion of the proceeds of the property and effects therein mentioned, to be paid over to the creditors of the firm of Durst & Buck, which proceeds must be paid over by the receiver to the appellants. *Reversed in part,*

*and a decree accordingly.*

(Decided March 8th, 1859.)