## WILLIAM DORSEY *vs.* THEODORE G. DASHIELL.

Two partners dissolved their partnership, and one of them covenanted to *release* the other from all debts, liabilities and responsibilities, which the other might be subject to on account of a store ; the covenantor was bound to pay the claims or to procure releases, and as no time was mentioned this must be done within a reasonable time.

The covenantee's right of action commenced within a reasonable time after the date of the articles, and from that time the act of limitations began to run,

The writ is so essential a part of the cause, that although the bill of exception does not state it to have been a part of the evidence, yet it is no valid objection to a prayer, that it refers to, and must be founded in part on, the date of the writ.

APPEAL from Somerset county court.

The plaintiff and defendant were parties in trade, and having determined to dissolve the partnership, entered into articles of agreement, bearing date the 6th January 1836. The agreement on the part of the defendant below, (Dorsey,) set forth in the declaration, is in these words : "And the said William Dorsey on his part and behalf, did covenant and agree to and with the said Theodore G. Dashiell, that he, the said William Dorsey, would release the said Theodore G. Dashiell, his heirs and assigns, of and from all, and all manner of debts due, liabilities and responsibilities, that he, the said Theodore G. Dashiell, might then be subject to on account of said store, or joint concerns between the said Theodore G. Dashiell and William Dorsey, or that might thereafter be ascertained to be due from said concern, from and after the date of said covenant."

14th May 1850, an action of covenant was brought by Dashiell for the breach of this agreement, and in his declaration, the alleged breach of the above article of agreement, was the non-payment by Dorsey of divers sums of money, which the plaintiff below was obliged to pay, and did pay, 27th May 1839; and so the defendant did not release him therefrom.

The defendant below relied on the act of limitations. There were several other pleas of which it is not necessary to take notice. Replication to the third plea, and an issue tendered; but there was no issue joined thereon.

An exception was taken at the trial of the case, which presents the question, at what time did the statute of limitations commence? The date of the articles of agreement, a reasonable time thereafter, or not until the payment by the plaintiff of some of the debts of the firm?

For the latter construction of the agreement, the plaintiff below contended; and moreover insisted, that the defendant abandoned his plea of limitations by declining to accept the issue tendered to him in the replication.

The case was argued before ECCLESTON, TUCK and MASON, J.

By *Waters* for appellant, and *Done* for the appellee.

*Waters.* The statute begins to run when there is a cause of action; the time of the breach is the time when the act of limitations commences, and not when the damage accrues. He referred to *2nd Saund. on Pl. and Ev.,* 645. 4 *Peters,* 172. 1 *Gill, Duvall vs. Peaselly.*

Release is one thing: to indemnify is another. By release is meant, that the party would do some act which would release the other.

*Chit. on Cont.,* 76, 79, 81.

12 *G. & J., Creswell vs. Hall,* is a case of indemnity.

We maintain that Dashiell could have instituted suit before he paid any money.

Dorsey *vs.* Dashiell.

He relied, also, on 3 *Bar. and Ald.*, 626. 5 *Bar. and Cres.*, 259. 3 *Bar. and Ald.*, 288.

With respect to the objection that there is no issue joined, he referred to *Steph. on Pl.*, 237. 1 *Chit. on Pleading*, 519, Want of a *similiter*, cannot be taken advantage of upon motion in arrest of judgment, or indeed by general demurrer. See 3 *H. & J., Tyson vs. Ricaud.*

*Evans' Pract.*, 332, act of 1825.

*Stephen on Pleading*, 71, as to effect of *oyer.*

*Done* for appellee.

No part of the agreement is in evidence, except what is set forth in the nar.

The writ was not before the jury: the prayer is based upon the writ in part.

Covenant is to do some act: as that he will release. He referred to 1 *Harrington*, 152 *and* 233. 1 *Bibb*, 379. 3 *Johnsons' Rep.*, 44. 20 *John.*, 85. 5 *Cowen*, 170. 4 *Day*, 321. 4 *Conn.*, 508.

Release, I admit, is a technical word, but it could not be used, in its technical sense, here, as the plaintiff had no claim to release. In construing this instrument, you must depart from its strict technical meaning; and its only sensible meaning is that he will indemnify.

As to the appellees 2nd point, that there was no issue joined on the plea of limitations: We could not demur, because it was the turn of the other party to plead. Issue not complete *if* not accepted. *Steph. on Plead.*, 55. 1 *Gill*, 258. 3 *H. & J.*, 109. No issue where there is no *similiter :* 11 *G. & J.*, 472. Want of issue is a waiver : 4 *G. & J.*, 277. As to prayer, whether the pleadings raise in or not : 7 *Gill*, 5. 1 *Gill*, 227. See also 4 *Gill*, 406, 421. 11 *Gill & Johnson*, 472, *Ragan vs. Gaither.*

*Waters* in reply. Oyer being craved, and profert given, the articles of agreement became a part of the nar. See *Steph. on Pl.*, 71. 7 *G. & J.*, 349.

Dorsey *vs.* Dashiell.

The writ is in evidence because of the oyer. In Maryland, though not in England, oyer of the writ may be had.

The prayer is based upon the evidence, not upon the pleadings.

Dashiell might have paid the debts immediately, and then have sued.

In *Ragan vs. Gaither*, there was no issue, either formal or substantial. The former pleading was not denied even informally.

ECCLESTON, J., delivered the opinion of the court.

The plaintiff and defendant being partners in a mercantile house, mutually agreed to dissolve the partnership; and on the sixth day of January, eighteen hundred and thirty-six, entered into articles of agreement, under seal, upon the subject. From which it appears that Dashiell sold and transferred his share, or half of the goods on hand, and of the debts and claims due the firm, to Dorsey. And Dorsey covenanted that he would release Dashiell from all the debts of the concern.

The writ was issued on the fourteenth of May 1850.

The nar alleges, that on the 27th of May 1839, the appellee paid sundry claims, due from the firm, amounting together to the sum of $1482.34. All of which claims are particularly set forth, and stated to have been due, prior to the execution of the articles of agreement.

Four pleas were filed. To the first, third and fourth, issues were regularly joined. The second was the plea of limitation. To this the replication tendered an issue, but the similiter was not entered.

At the trial it was admitted "that the facts stated in the plaintiff's declaration are true."

The defendant prayed the court to instruct the jury, that if they believed the evidence, and that the original writ issued on the 14th of May 1850, then the action was barred by limitation, which instruction the court refused to give. The

26      v. 1

verdict and judgment being for the plaintiff, the defendant appealed.

The case thus presented for our consideration, renders it necessary for us to decide, at what time the plaintiff's right of action commenced under the covenant. Whether immediately after its execution, or after giving the appellant a reasonable time to pay the claims against the firm; or not until the appellee had actually paid the claims himself.

If he could not have sued until he incurred damage, by paying the money, the court were right in refusing the instruction. But if he had a right to sue as soon as the articles of agreement were signed, or after allowing the appellant a reasonable time to discharge the debts due by the firm, the claim of the appellee was barred by limitation, when this suit was instituted. For twelve years prior to the date of the writ, carries us back only to the 14th of May 1838; being upwards of two years and four months after the date of the covenant; which would be giving more than a reasonable time for Dorsey to pay off the claims against the partnership.

The proper construction of the promise to release is first to be settled.

Dorsey covenants to release Dashiell of and from, all and all manner of debts, dues, liabilities and responsibilities, which he, Dashiell, might then be subject to, on account of the store or joint concerns between the parties, or that might thereafter be ascertained to be due from said concern, from and after the date of the said covenant. To *release*, when used in reference to debts, in a technical sense, is generally applicable to the discharge of claims due by a debtor to his creditor. But from the nature of this transaction, and the language employed, it is perfectly clear, that the parties intended the word release, should include within its meaning all claims of every description, for which the appellee could be held responsible, as a member of the firm.

The debts, which now form the subject of controversy, not being due to Dorsey, a release executed by him would have

Dorsey vs. Dashiell.

availed the appellee nothing. What then did the promise or covenant to release, oblige Dorsey to do? To make the contract of any value to the appellee, it must be so construed as to require the appellant to pay the claims, or to procure releases, from the creditors. He could not release Dashiell in any other way. And no day being named in the contract by which it was to be performed, the law requires that it should have been done within a reasonable time.

It has been contended on the part of the appellee, that admitting the engagement to release is not to be considered a release in its technical sense, then it is simply a contract to indemnify and save harmless; and as such could give no right to sue before the payment of the claims. It is a well settled principle, that where the contract is merely to indemnify and save harmless, there is no right of action under it, until there has been actual loss or damage. See 3 *Denio R.*, 326, *Churchill vs. Hunt.* 12 *G. & J.*, 38, *Cresswell vs. Hall.* But there are covenants, which not being contracts simply to indemnify, will bind the covenantor to pay a debt or debts, or to do a particular thing, where a failure to comply, will entitle the covenantee to sue and recover damages, not merely for actual, but for probable loss. In *Sedgwick on the Measure of Damages*, 309, 311, &c., some of the cases on this subject are reviewed; and the propriety of allowing damages except for actual loss, is much resisted by the author. He considers "any rule by which actual damages are given, where no actual loss is sustained, is in truth nothing but an effort to engraft on the courts of common law a species of specific performance, irregular and illegitimate." Although he finds great fault with the principle of allowing damages for probable loss, it is evident he looks upon it as sanctioned by the decisions. And no doubt but that it is so, both in this country and in England. See *Carr vs. Roberts*, 5 *B. & A.*, 78, *in* 27 *Eng. Com. L. R.* 39 *Churchill vs. Hunt*, 3 *Denio*, 326, and the cases referred to by Sedgwick in the notes, on pages 309. *St. Albans vs. Curtis*, 1 *Chip.*, 164. And *Cro. James*, 340, *Truman vs. Shun.*

In *Taliaferro vs. Brown*, 11 *Alaba.*, 702, upon the dissolution of a partnership, the retiring partner received from the remaining partner, and several sureties, a bond conditioned to save harmless, the obligee from the payment of all debts, &c., concluding with a guaranty, that the remaining partner should fully satisfy and discharge all debts, dues or demands, arising from said establishment. A majority of the court held this to be a bond of indemnity. The consideration which seemed to have most influence in producing this decision, was, that as the sureties had no assetts or funds belonging to the firm, with which to pay the debts, it never could have been the intention of the parties, that the sureties should be bound to pay off the claims, immediately upon the execution of the bond, or else be liable to a suit, on failure to do so. Indeed, the court say, that if the remaining partner were the sole party to the bond, they should be inclined to decide differently.

The Chief J., *(Collier,)* dissented, and thought the bond bound the principal obligor and his sureties, to pay in a reasonable time.

In the case before us there are no sureties; and the covenantor received all the assetts of the firm.

In *Churchill vs. Hunt*, 3 *Denio*, 326, upon a bond with a condition to save harmless and indemnify the obligor against his *liability*, as the maker of a promissory note, then held by a third person, *and to pay the same*, or cause it to be paid, it was decided, that the obligee, without first paying the claim, might recover the amount of the note against the obligor, upon his failure to pay the holder. But the obligee did not recover the costs of a judgment obtained against him on the note; the same not having been paid. The part of the condition so far as the costs were concerned, was held to be but an engagement to indemnify; and not part of the promise to pay.

Real estate having been sold in England subject to sundry incumbrances, the purchaser covenanted to save the vendor harmless against the incumbrances, and also to pay the same.

On account of an annuity, which was one of the claims included in the covenant, the vendor paid a small sum. In a suit against the purchaser, a verdict was rendered only for the amount paid; and a new trial was granted. At the second trial the verdict was given not only for the sum paid, but for the whole amount of the annuity then due. Which verdict was sustained by the court, when a motion was made to set it aside, on the ground that the plaintiff had no right to recover damages exceeding the actual payment. See *Carr vs. Roberts*, 5 *B. & A.*, 78, in 27 *Eng. Com. L. R.*, 39.

It may be said that the cases above referred to are upon contracts containing promises *to pay*, and not *to release*. But we do not perceive any material difference.

A failure to pay, when the contract is in language to do that, subjects the covenantee to the inconvenience of being forced to settle the claim. A failure to release under circumstances like the present, does the same thing. In truth, an engagement to release, in such a case as this, is in effect a promise to pay; for it is only by paying, or what is equivalent to it, by satisfying the creditors for their claims, that the covenantor could release according to his contract. And it cannot be doubted that it was the intention of the parties, that Dashiell should never be required to pay any portion of the debts; but as the assetts of the firm were to go into the hands of Dorsey, he should fully settle and liquidate the debts; thereby releasing and discharging his retiring partner, from all liability, on account of the concern.

In 1 *Saund. R.*, 116, *n.* 1, (the 1*st Amer. Ed.*,) the subject of pleading, in an action upon a bond to indemnify, is treated of. The chief object being to shew when a defendant may plead *non damnificatus*, or must plead specially, by shewing how he has saved harmless. Where the condition is to *indemnify* and *save harmless*, the plea of *non damnificatus* is a proper defence. The defendant, however, is bound to plead specially, the manner of performance, "where the condition is to *discharge or acquit* the plaintiff from such a bond, or other particular thing." But he may resort to the general plea,

"where the condition is to discharge or acquit the plaintiff *from any damage* by reason of such bond or other particular thing, for that is in truth the same thing with a condition to save harmless."

Here a clear distinction is drawn, between a promise to *discharge or acquit*, from a bond or other thing, and a promise to discharge and acquit, *from any damage*, by reason of such bond or thing. The latter is held to be a mere contract to indemnify and save harmless, but the former is not. In the contract under consideration, Dorsey covenanted to *release* Dashiell of and from all the *debts* of the concern, and not from *damages* on account of the debts. If a promise to discharge or acquit from a bond is not an engagement to indemnify, surely a covenant to *release* cannot be so.

We think the contract before us must be construed as equivalent to a promise to pay. And as the claims in controversy were all due prior to the dissolution of the partnership, Dorsey was bound to discharge them, within a reasonable time after the date of the covenant. He failed to do this. Which failure gave the appellee a right of action against him, more than twelve years prior to the issuing of the writ.

We have said nothing in regard to the question, (presented in argument,) whether oyer of the covenant makes the portion of that instrument not set forth in the nar, evidence in the cause, under the agreement which admits that the facts stated in the declaration are true; because, no matter how that question might be decided, it would not change our opinion, as to the propriety of the court's refusing to give the instruction asked for. There is enough in the nar to justify our construction of the covenant.

In support of the opinion of the court below it was contended, that the exception states no evidence, whatever, except the facts set out in the declaration: that the date of the writ does not appear in the nar; and the defendant's prayer being based upon the hypothesis, that the original writ issued on the 14th of May 1850, the court could not do otherwise than refuse it; because there was no proof before the jury on the subject.

We do not think the rejection of the prayer can be sustained on this ground. The writ is so essentially part of the cause, that whether the bill of exception states it to have been offered in evidence or not, no valid objection can be urged against a prayer because it refers to, and is founded in part, on the date of the writ.

On the part of the appellee it has been said, that there is no issue joined on the plea of limitation, in consequence of the failure to enter the similiter to the issue tendered by the replication; and therefore the defendant's prayer being in regard to limitation, was properly rejected. If this be a defect, it is one of form and not of substance; and it is at least very doubtful, whether, after verdict, any advantage can be taken of it. But we need express no opinion in regard to the absence of the similiter. Unless we should clearly overrule several decisions of the Court of Appeals since the act of 1825, ch. 117, the alleged defect in pleading is not a proper subject for our consideration, in revising the opinion of the county court. The prayer is for an instruction to the jury upon the evidence, in regard to limitation; without making any reference to the pleas. In *Leopard vs. C. & O. Canal Company*, 1 *Gill*, 227, the prayer asked the court to instruct the jury as to the effect of the evidence; and the court held that there was no question before them as to the sufficiency of the pleadings. On the contrary, the prayer, they say, "concedes by implication the sufficiency of the pleadings in the cause."

In *Stockston vs. Frey, 4th Gill*, 421, this principle is carried to the extent, that if a party desires the opinion of the court upon the evidence, in connection with the pleadings, he should frame his prayer accordingly: "as for example, that the plaintiff is, or is not, entitled to recover under the pleadings."

In *Brooke vs. Waring,* 7 *Gill*, 5, the Court of Appeals say: "Neither of the bills of exception, in this case, presented to the county court any question for decision upon the pleadings, and of course, none is presented here. The only

questions for our decision arise upon the proof, without reference to the pleadings under which it is offered."

According to the decision in *Leopard vs. C. & O. Canal Company*, when, at the trial of a cause, an objection is raised as to the admissibility of evidence offered, then the pleadings are to be considered. The court cannot judge of the pertinence or materiality of the proof, but by an inspection of the pleadings.

The prayer in the present instance was, in regard to the effect of the evidence, and not as to its admissibility.

It did not more necessarily call the attention of the court to the state of the pleadings, than the prayer did, in either case to which we have referred, on this point. And with three recent and very positive decisions before us, we feel constrained to follow them.

Believing that the defendant was entitled to the instruction, which the court refused to give, we must reverse the judgment. And the case will not be sent back, under a procedendo, because it is manifest that the plaintiff cannot recover; as his claim is barred by limitation.

*Judgment reversed, but no procedendo ordered.*