# LEVIN ET AL. *v.* FRIEDMAN ET AL.

[No. 240, September Term, 1973.]

*Decided April 16, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and ELDRIDGE, JJ.

*Roy Niedermayer* for appellants.

*Henry E. Weil*, with whom were *Shapiro, Weil & Jacobs* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We shall here affirm the determination by a trial judge (Shure, C.J.) that appellants, Lawrence L. Levin *et al.*, sued too late.

Levin and his associates (Levin) were involved with land in Prince George's County. In connection with development of that land a performance bond was executed to that county guaranteeing completion in their subdivision of grading and paving, and the construction of concrete curbs, gutters, sidewalks, etc. Continental Casualty Company was the surety. Levin had personal liability. Levin sold the land to Basilisk, Inc. (Basilisk). The original contract of sale contemplated that any bonds existing relative to this land

should "be transferred and assumed by Purchaser" and that the "Purchaser [should] hold Sellers harmless with respect to any liability on account of same." About two months later a letter was addressed to the seller stating:

"In view of the fact that a reference in the land sales contract dated May 3, 1965 and addendum thereto, paragraph 5, re certain lots in Schrom Hills Subdivision, Prince George's County, Maryland contains a stipulation that all street bonds on construction loans in connection thereto be transferred to the Purchaser and the Purchasers in turn to save the Sellers harmless with respect to any liability on account of same is found to be inoperable as to the transfer of said Bonds, because the Surety is reluctant to transfer said bond (s) as such, inasmuch as they now hold the Sellers liable for performance thereunder.

"It is therefore, for good and valuable consideration, agreed that the Sellers will continue said Bond (s); that *the Purchasers* herein (Basilisk Inc.) and individually by Gerald Friedman, Martin Goldberg, their respective wives; successors and assigns will and shall hold the Sellers harmless against any liability on account of same, and *shall do all things to perform and complete the obligations as insured under the bond,* as though Basilisk, Inc., and individually by Gerald Friedman, Martin Goldberg, their respective wives, successors and assigns executed said Bond (s). The liability hereunder shall continue until the expiration date of said bond (s) and the Purchasers shall notify the Seller immediately upon the completion of work in order to notify the Insurance Carrier and/or Surety to cancel same and thereby be relieved of further liability thereunder. Sellers shall keep said bond (s) in full force and effect until completion of the work and Purchasers agree to promptly complete said work as required by appropriate authorities." (Emphasis added.)

The letter was signed on behalf of Basilisk and also by Mr. and Mrs. Friedman and Mr. and Mrs. Goldberg (collectively, the purchasers). It was accepted by Levin. The Friedmans and Basilisk are appellees here.

By October 6, 1967, Levin was aware of problems insofar as the completion of this work was concerned because on that date counsel for Levin addressed a letter to the purchasers. He advised that he represented Levin, enclosed a copy of the agreement of July 1, 1965, and further stated:

"We are advised that the work on the lots has now been abandoned and that the first trust holder is foreclosing on the lots. You are advised that we will hold you legally liable under your warranty agreement for all costs and expenses in connection with the performance of work under the bond to the Public Works Department of Prince George's County."

This was followed by a letter from counsel for the bonding company to Levin dated May 3, 1968, advising:

"You gentlemen, as individual indemnitors and the persons primarily responsible for the performance of the permit work, are therefore requested to take the necessary steps to complete such work without further delay and at no cost or expense to Continental. You are also requested to advise Continental how and when such work will be performed."

On June 27, 1968, Prince George's County submitted to Levin an itemization of the defects in the work. Apparently, years then passed with Levin's doing nothing as a result of this correspondence other than perhaps to offer a fervent prayer that nothing more would be heard about the matter. Then, on December 10, 1971, the bonding company sued Levin on his agreement to indemnify that company against any liability or loss as a result of its having written the bond to the county.

Levin took action on January 18, 1972, by filing a third-party claim against Gerald Friedman and Sandra Friedman, his wife; Martin Goldberg and Adele Goldberg, his wife; and Basilisk, based upon the July 1, 1965, letter agreement. On March 6, 1973, a settlement was reached between Levin and the bonding company by which Levin agreed to pay $15,000 to the bonding company for its damages. A settlement had previously been effected between Levin and Mr. and Mrs. Goldberg.

The case proceeded to trial against Mr. and Mrs. Friedman and Basilisk. The trial judge found the case to be governed by the provisions of Maryland Code (1957) Art. 57, § 1 requiring suit to be filed "within three years from the time the cause of action accrued." In a comprehensive and well reasoned opinion he stated, in part:

> "Clearly, then, by October 6, 1967, all parties were notified that work on the lots had been abandoned, and on May 3, 1968, Continental Casualty Company made demand on the indemnitors to take the necessary steps to complete the work 'without further delay.' The Third-Party Claim against the Friedmans, not having been filed until January 18, 1972, comes too late, liability having been established more than three and one-half ($3^1/_2$) years prior thereto."

Two arguments are presented by Levin as to why the trial judge erred in dismissing this cause of action as barred by the statute of limitations: (1) that "[a]ppellants' cause of action did not accrue, and the statute of limitations begin to run, until their liability became fixed and established by the settlement of the action brought against them as a result of the appellees' default in performance"; and (2) that "[t]he trial court applied the wrong period of limitations to appellants' cause of action against appellee Basilisk." The reasoning on the latter point is based upon a contention that the contract was executed under seal by Basilisk, is thus a specialty, and is controlled by the 12 year period of limitations contained in Code (1957) Art. 57, § 3. We shall consider these contentions in inverse order.

The letter of July 1, 1965, setting forth the agreement upon which suit was brought, is not under seal. In response to a question at oral argument as to the instrument under seal to which reference was made in this contention of Levin, counsel pointed to the sales agreement between Levin and Basilisk *et al.* No corporate seal was there affixed nor was any reference made to a corporate seal. After "Basilisk, Inc.," there is printed "(SEAL)." If we were to assume, *arguendo*, that Levin could claim against Basilisk in this proceeding upon the strength of the contract of sale, notwithstanding his reference in his declaration to the letter of July 1, 1965, and his failure to refer in that declaration to the earlier contract of sale, his contention that the contract constituted a speciality would fall upon the basis of the holding in *Smith v. Woman's Medical College,* 110 Md. 441, 445-46, 72 A. 1107 (1909), since there was no reference made in the body of that contract to the corporate seal and there was nothing on the face of the paper to indicate that it was intended to be issued as a specialty. For the most recent discussion of this subject *see Gildenhorn v. Columbia Real Estate Title Insurance Company,* 271 Md. 387, 317 A. 2d 836 (1974).

Levin argues "that a cause of action founded upon a right of indemnity does not accrue, and the statute of limitations [does not] begin to run, until the indemnitor either suffers or pays a judgment ... or settles an action brought against him as a result of the indemnitor's default." He undoubtedly has in mind two types of indemnity, an indemnity against liability and an indemnity against loss or damage. "Strict indemnity" has been called "indemnity against loss or damage." 41 Am. Jur. 2d *Indemnity* § 28 (1968), and 42 C.J.S. *Indemnity* § 14c (1944). Where a contract is strictly one of indemnity, that is, one against loss or damage, the indemnitee cannot recover until he has made payment or otherwise suffered an actual loss or damage against which the covenant runs. Where, however, the contract is one of indemnity against liability, it is generally held that an action may be brought and recovery had as soon as the liability is

legally imposed, as when judgment is entered, even though at that point no actual loss has been sustained and the judgment has not been paid. 41 Am. Jur. 2d *op. cit.* §§ 29, 31 and 42 C.J.S. *op. cit.* §§ 14b, 14c. As Judge Pearce put it for the Court in *Poe v. Phila. Casualty Co.*, 118 Md. 347, 84 A. 476 (1912):

> "The distinction . . . is nowhere more clearly stated than in *Amer. Emp. Liability Ins. Co. v. Fordyce*, 36 S.W. Rep. 1051, in these words: 'The difference between a contract of indemnity, and one to pay a legal liability, is, that upon the former an action cannot be brought and a recovery had, until the liability is discharged; whereas upon the latter, the cause of action is complete when the liability attaches.' The germ of this distinction is found in the language of *Sedgwick on Damages*, sec. 315: 'An obligation to pay is not the same as payment.' " *Id.* at 356.

To the same effect *see Alberts v. American Casualty Co.*, 88 Cal. App. 2d 891, 898-99, 200 P. 2d 37 (1948); *Kroblin Transfer v. Birmingham F. Ins. Co.*, 239 Iowa 15, 18, 30 N.W.2d 325 (1948); *City of Topeka v. Ritchie*, 102 Kan. 384, 388, 170 P. 1003 (1918); *Leshefsky v. American Employers' Ins. Co.*, 293 Mass. 164, 199 N. E. 395, 399, 103 A.L.R. 1388 (1936); *Stephens v. Pennsylvania Casualty Co.*, 135 Mich. 189, 193, 97 N. W. 686 (1903); *City of Lincoln v. First Nat'l Bank of Lincoln*, 67 Neb. 401, 405, 93 N. W. 698 (1903); *Conner v. Reeves*, 103 N. Y. 527, 9 N. E. 439, 440 (1886); and *Copley v. Carey*, 141 W. Va. 540, 549-50, 91 S.E.2d 461 (1956).

There is yet a third type of indemnity contract, however, one which contains a promise of the indemnitor to perform a certain act or to make specified payments for the benefit of the indemnitee. Under such a contract an immediate right of action accrues to the indemnitee upon the failure of the indemnitor to perform, regardless of whether any actual damage has been sustained. 41 Am. Jur. 2d *op. cit.* §§ 28, 39; 42 C.J.S. *op. cit.* § 14d; 2 J. Sutherland, *A Treatise on the Law of Damages* § 765 (4th ed. J. Berryman 1916); *Gage v.*

*Lewis*, 68 Ill. 604, 617-18 (1873); *Northern Assurance Co. v. Borgelt*, 67 Neb. 282, 286, 93 N. W. 226 (1903); *In re Negus*, 7 Wend. 499 (N.Y. 1832); and *Stuart v. Carter*, 79 W. Va. 92, 96, 90 S. E. 537 (1916). A clear statement on the subject is found in 2 T. Sedgwick, *A Treatise on the Measure of Damages* § 786 (9th ed. A. Sedgwick & J. Beale 1912):

> "[W]here the plaintiff holds not merely an agreement to indemnify and save him harmless against the consequences of the default of the other, but an express promise to pay a debt, or to do some particular act, then the position of the parties entirely changes. The relation of principal and surety disappears, and it has been held that the failure to perform the act agreed on gives the plaintiff a right of action even before he has suffered any direct damage himself; and so it has also been decided as a rule of pleading." *Id.* at 1640.

The Maryland rule generally with reference to limitations is that they begin to run from the time the cause of action accrues. *Erie Ins. Exch. v. Calvert Fire Ins.*, 253 Md. 385, 390, 252 A. 2d 840 (1969). Likewise, the rule is that rights cannot be enforced in piecemeal fashion, that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof. *Iula v. Grampa*, 257 Md. 370, 373, 263 A. 2d 548 (1970); *Ex parte Carlin*, 212 Md. 526, 129 A. 2d 827 (1957), and cases there cited.

Examination of the letter which is the basis of the claim here reveals that in typical, lawyerlike fashion, the same thing has been said in two ways. What the purchasers agreed to do was to carry out the public works agreement with Prince George's County. They covenanted "to perform and complete [those] obligations" and to "hold the Sellers harmless against any liability on account of same." The hold harmless provision is a redundancy since Levin would have had a right of action for the amount of his loss in the event the purchasers failed to carry out those obligations. It is similar to the repetitious language found in deeds, wills, or

contracts, such as "grant and convey," "give, devise and bequeath," or "covenant and agree."

It will be seen that this contract, stripped of its redundancy, is in fact an indemnity contract where the indemnitor is to perform acts for the benefit of the indemnitee. Our predecessors in *Dorsey v. Dashiell,* 1 Md. 198 (1851), understood just such a contract. The contract and the facts in that case are not the same as in this case, but a decided similarity exists. Dorsey and Dashiell were partners. An agreement was entered into between them in 1836 by which Dorsey promised that he would release Dashiell "of and from all, and all manner of debts due, liabilities and responsibilities, that he . . . might then be subject to on account of said store [(which they had carried on as partners)] . . . from and after the date of said covenant." In 1850 Dashiell brought an action against Dorsey for nonpayment of certain of these items which Dashiell had been obliged to pay in 1839. Dorsey admitted that the facts stated in the declaration were true. He pleaded limitations, however, and requested an instruction, refused by the trial court, that the action was barred by limitations. Our predecessors reversed. Judge Eccleston said for the Court:

> "The case thus presented for our consideration, renders it necessary for us to decide, at what time the plaintiff's right of action commenced under the covenant. Whether immediately after its execution, or after giving the appellant a reasonable time to pay the claims against the firm; or not until the appellee had actually paid the claims himself.

> "If he could not have sued until he incurred damage, by paying the money, the court was right in refusing the instruction. But if he had a right to sue as soon as the articles of agreement were signed, or after allowing the appellant a reasonable time to discharge the debts due by the firm, the claim of the appellee was barred by limitation, when this suit was instituted. For twelve years prior to the date of the writ, carries us back only to

the 14th of May 1838; being upwards of two years and four months after the date of the covenant; which would be giving more than a reasonable time for Dorsey to pay off the claims against the partnership." *Id.* at 202.

* * *

"Here a clear distinction is drawn, between a promise to *discharge or acquit*, from a bond or other thing, and a promise to discharge and acquit, *from any damage*, by reason of such bond or thing. The latter is held to be a mere contract to indemnify and save harmless, but the former is not. In the contract under consideration, Dorsey covenanted to *release* Dashiell of and from all the *debts* of the concern, and not from *damages* on account of the debts. If a promise to discharge or acquit from a bond is not an engagement to indemnify, surely a covenant to *release* cannot be so.

"We think the contract before us must be construed as equivalent to a promise to pay. And as the claims in controversy were all due prior to the dissolution of the partnership, Dorsey was bound to discharge them, within a reasonable time after the date of the covenant. He failed to do this. Which failure gave the appellee a right of action against him, more than twelve years prior to the issuing of the writ." *Id.* at 206. (Emphasis in original.)

The contract here in essence was one to perform the public works agreement with Prince George's County. A right of action accrued in favor of Levin against the appellees here upon the failure to perform that contract. If we were to assume, *arguendo*, that the cause of action did not arise in 1967, when Levin's attorney placed the purchasers on notice of Levin's knowledge that they had defaulted in their performance of that contract, then certainly it arose when the bonding company gave notice to Levin in 1968 that the purchasers had breached that contract. This was more than

three years prior to the filing of the third-party claim. Thus, the suit is barred by limitations.

*Judgment affirmed; appellants to pay the costs.*