**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1323**

ARTHUR B. MCNEAL, SR.,

    Plaintiff - Appellant,

   v.

MONTGOMERY COUNTY, MARYLAND; BEATRICE P. TIGNOR; JANET
WORMACK,

    Defendants – Appellees,

   and

MONTGOMERY COUNTY OFFICE OF PROCUREMENT; MONTGOMERY COUNTY
OFFICE OF HUMAN RESOURCES,

    Defendants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Marvin J. Garbis, Senior District
Judge.  (1:04-cv-02984-MJG)

Argued: October 31, 2008   Decided: January 20, 2009

Before NIEMEYER and AGEE, Circuit Judges, and Liam O'GRADY,
United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Ronald Richard Hogg, Ellicott City, Maryland, for
Appellant.  Edward Barry Lattner, COUNTY ATTORNEY'S OFFICE,

Rockville, Maryland, for Appellees. **ON BRIEF:** McEvan H. Baum, Ellicott City, Maryland, for Appellant. Leon Rodriguez, County Attorney, Marc P. Hansen, Deputy County Attorney, Patricia P. Via, Chief, Division of Litigation, Sharon V. Burrell, Associate County Attorney, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for Appellees.

––––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Arthur B. McNeal, Sr. ("McNeal") appeals from the judgment of the United States District Court for the District of Maryland, in favor of Montgomery County, Maryland ("the County"), the Montgomery County Office of Procurement ("Office of Procurement"), the Montgomery County Office of Human Resources ("Office of Human Resources"), Beatrice Tignor ("Tignor"), and Janet Wormack ("Wormack") (collectively "the Defendants"). The district court dismissed all claims against the Office of Human Resources and the Office of Procurement. Granting summary judgment in favor of the remaining Defendants, the district court held that McNeal had not proven his claims of employment discrimination, retaliation, or a hostile work environment under Title VII, 42 U.S.C. § 2000(e) et seq. (2008), age discrimination under the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 621 (2008); constructive discharge; tortious interference with contract; conspiracy; intentional infliction of emotional distress; and respondeat superior under Maryland state law. McNeal has appealed the judgment of the district court as to his claims for employment discrimination, retaliation, hostile work environment, age discrimination, constructive discharge, tortious interference with contract, and intentional infliction of emotional distress. For the following reasons, we affirm the judgment of the district court.

## I.

McNeal, an African-American male over the age of forty, had been employed by the Office of Procurement since 1990 in the position of Program Manager I. His position later became Program Manager II. Since 1995, McNeal has been supervised by Tignor, an African-American female over the age of forty, who is the Director of the Office of Procurement. As his supervisor, Tignor assigned work to McNeal and approved work forwarded to him by other agencies.

## A.

In April 1998, McNeal was assigned additional duties beyond his original responsibilities as Program Manager. Specifically, McNeal represented the Office of Procurement on a negotiation team for an 800 MHz Public Safety Radio System for the County. Tignor contends that the team "simply met twice weekly for meetings of about three hours." McNeal claims that "he was one of the three lead negotiators for the public service radio contract, that he wrote the contract, and that some weeks he spent up to thirty hours on the task." A lead contract negotiator reported that "McNeal was a lead negotiator who easily spend 20 hours or more per week on the project during peak negotiation periods and wrote both contracts."

4

On August 11, 1999, McNeal submitted a request to the Office of Procurement for a temporary promotion as a means of compensation for these additional responsibilities ("temporary promotion"). Tignor informed McNeal that his request had been denied because there were no positions available to which McNeal could be promoted. Tignor had approved a request that McNeal's current position be reclassified so that he could receive a pay increase. Ultimately, the pay raise request approved by Tignor was rejected by the Office of Human Resources in August 2000.

On November 29, 1999, McNeal applied for a promotion within the Office of Procurement to "the position of Manager II, Professional Services/Construction" ("permanent promotion"). McNeal contends that, upon informing Tignor of his intention to apply for the permanent promotion, she responded "Art, aren't you ready to retire?"

As part of the application process, the Office of Human Resources reviewed McNeal's application and resume and rated his qualifications on a standard form. The form had five categories with possible ratings in each category of "below average," "average," or "above average." The rating process was conducted by Wormack and Deborah Goodwin ("Goodwin"), the Assistant Chief Administrative Officer, both of whom were selected by Tignor as raters. Wormack was chosen because she had recently vacated the position for which McNeal was applying and Goodwin was chosen

5

because she had "significant experience" in rating candidates. On December 28, 1999, McNeal was informed by letter that "his overall ranking for the position was 'qualified,' as opposed to 'below average' or 'well qualified.'" McNeal's lowest ranking was for the category entitled "experience in managing a diverse workforce," for which he received the rating "below average." McNeal claims that "Wormack did not credit his experience supervising diverse workforces because his experience went 'way, way back'" and he had no supervisory responsibility during the last nine years. Because he received a rating of "qualified," and not "well qualified," McNeal was not interviewed for the position. Instead, the Office of Procurement interviewed a thirty-eight year old male of Asian descent named John Lee ("Lee"), a Senior Procurement Specialist with the Office of Procurement. Lee was rated equally to McNeal in every category, except he received "above average" in the "supervising a diverse workforce" category. Lee was rated as "well qualified" overall and was ultimately hired for the position.

McNeal protested his rating to a Human Resources Specialist. The Specialist "reviewed the ratings, concluded a mistake had been made in McNeal's ratings and contacted Tignor to suggest that the [Office of Human Resources] reconvene the raters to reconsider McNeal's ratings." Tignor refused.

McNeal contends that his work environment was made unbearable by several ongoing conflicts with Tignor. McNeal claims that Tignor repeatedly accused him of theft of office property. Tignor "allegedly accused McNeal of stealing such property as a spoon, punch ladle, a table, a red hand truck, and an ergonomic keyboard." Tignor denies accusing McNeal of stealing anything, although she admits that perhaps she did question him about the whereabouts of several objects.

McNeal also claims that Tignor made several racist and harassing comments about him. These statements were not made directly to McNeal, but instead were allegedly made to other employees.

C.

McNeal filed a discrimination complaint with the Office of Human Rights on June 14, 2000, alleging discrimination based on race and on sex. He later amended the complaint to include a claim for age discrimination. The Office of Human Rights issued a Determination Report which concluded that Tignor had provided a "rational and non-discriminatory explanation for denying [McNeal's] request for a temporary promotion" because McNeal was "not actually filling a higher level position when he was assigned as [the Office of Procurement's] representative on the

7

public service radio contract negotiation team." However, the Determination Report also concluded that Tignor "harassed [McNeal] with unfounded accusations of theft" and "discriminated against [him] based on age by entirely discounting all his supervisory experience" (in the rating for the permanent promotion application), and "discriminated against [McNeal] on the basis of race and age by irrationally refusing to allow correction of unfairness against him in the rating process." The Office of Human Rights further stated that "there were "reasonable grounds to believe the [Office of Procurement] discriminated against [McNeal] on the bases of race, sex and age" and that the Office of Human Resources "discriminated against [McNeal] on the basis of age."

McNeal contends that after Tignor became aware of his complaint her harassment of him intensified, and that this treatment ultimately led to his decision to retire from employment with the County in January 2001. McNeal claims that Tignor "began to evaluate [his] job performance with unprecedented scrutiny and she engaged in conduct to render his position expendable." McNeal avers that these actions included evaluating his performance in the presence of a subordinate and that "Tignor's constant scrutiny of [his] whereabouts was so pervasive and conspicuous that fellow . . . team members would jokingly ask him if he had a hall pass or permission slip to

8

attend their meetings." McNeal also claims that Tignor scrutinized his sick leave and placed him on restriction for abuse of sick leave, "despite the fact that he had a remaining sick leave balance of 49 hours and an annual leave balance of 288 hours." Tignor responds that "no other employee under her direct supervision had excessively misused sick leave as [McNeal]," and that, even so, she had taken similar actions with other employees.

After his retirement, McNeal was scheduled to begin work as Baltimore City's Purchasing Chief on February 5, 2001. McNeal claims that "when, through a casual encounter, Tignor learned of Baltimore City's intention to hire him she told a Baltimore procurement supervisor that McNeal had 'problems in his employment history [and] was difficult to work with.'" Subsequent to this conversation, McNeal contends his employment date was delayed by two weeks, although McNeal ultimately did begin work with Baltimore City.

## D.

McNeal claims that, because of Tignor's conduct and his experience at the Office of Procurement, he was "forced to seek medical treatment for severe stomach pain, a bleeding lesion in his stomach wall, abdominal pains, an irritable colon, an upset stomach, and nausea." He claims he has also "experienced

9

anxiety, chest pain, shortness of breath, sweating, a recurring rash due to nervous scratching, and additional physical symptoms attributable to . . . severe emotional distress."

## II.

McNeal raises four primary issues on appeal. First, McNeal asserts that his Maryland state law claims of constructive discharge, tortious interference with contract, and intentional infliction of emotional distress (collectively the "state law claims") are not barred by Maryland's Statute of Limitations, nor barred by the notice requirement under the Maryland Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-304(a) (2008). Further, McNeal contends that the district court erred in granting summary judgment on his intentional infliction of emotional distress claim for substantive reasons. McNeal also asserts that the district court erred in granting summary judgment on his discrimination, retaliation, and hostile work environment claims. Finally, McNeal argues that Wormack and Tignor, as individuals, are not barred from liability under the ADEA, 29 U.S.C. § 613(a) (2008), and the district court erred in granting summary judgment as to these claims.

On appeal from the district court, we review de novo the court's conclusions of law. Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005). In reviewing an order granting

10

summary judgment, an appellate court applies the same standard used by the district court.  Summary judgment is appropriate only where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987).  However, summary disposition of Title VII cases is "not favored." Logan v. Gen. Fireproofing Co., 521 F.2d 881, 883 (4th Cir. 1971).


## A. State Law Claims

Maryland law governs the state law claims in this case, all of which are barred by the applicable Maryland Statute of Limitations as well as the Maryland Tort Claims Act.


### 1. Maryland Statute of Limitations

The applicable Maryland Statute of Limitations requires that "a civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which the action shall be commenced."  Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2008); see also Levin v. Friedman, 317 A.2d 831, 833 (Md. 1974).  McNeal filed his lawsuit on September 17, 2004.  The last possible tortious act occurred no later than January 2001, when he retired from his employment with the County.

11

McNeal does not contest that the three year period is applicable, but argues that the Statute of Limitations for the state law claims should be equitably tolled during the time in which he was exhausting administrative procedures as to his Title VII claims, which arose from the same set of circumstances. This Court in Shofer v. Hack Co., 970 F.2d 1316 (4th Cir. 1992) held that "[t]he rule in Maryland concerning equitable tolling of statutes of limitations 'can be fairly termed one of strict construction.'" Id. at 1320 (quoting Walko Corp. v. Burger Chef Sys., Inc., 378 A.2d 1100, 1101 (Md. 1977)). The district court correctly held that the filing of McNeal's claim with the Office of Human Rights "does not toll the statute of limitations for claims that 'although related, and although directed to most of the same ends, are separate, distinct, and independent.'" McNeal v. Montgomery County, No. MJG-04-2984, slip op. at 10 (D. Md. Mar. 15, 2008) (unpublished) (quoting Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 461 (1975)). McNeal's claims for constructive discharge, tortious interference with contract and intentional infliction of emotional distress, although arising from the same set of circumstances, are completely independent from his Title VII claims. Thus the time for filing a lawsuit as to these causes of action was not tolled while McNeal pursued his Title VII

12

administrative remedies.   McNeal was required to file suit within three years of January 2001, which he failed to do.

## 2. Notice

The district court was also correct in granting summary judgment as to the state law claims because McNeal failed to give proper notice under the Maryland Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-304 (2008).  The Act requires that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Id.  Proper notice requires that, within 180 days of injury, the Plaintiff give written notice in person or by certified mail to the County Executive.  Id.  McNeal gave written notice of his claims to the Office of Human Rights, but failed to give notice, as required by statute, to the County Executive.  This omission is fatal to McNeal's state law claims.

The Office of Human Rights is an independent agency that investigates allegations of discrimination against employers in the County, and not allegations against the County itself, and is clearly not the County Executive, the notice recipient

13

required by the statute.[1]  The Act also requires that compliance with the provision should be alleged by the plaintiff in the complaint as an element of the cause of action.  <u>Madore v. Baltimore County</u>, 367 A.2d 54, 56 (Md. Ct. Spec. App. 1976). McNeal failed both to comply with the statutory notice provision and to allege compliance in his complaint.[2]

---

[1] McNeal argues that he has substantially complied with the notice requirement.  However, the decision to waive notice is entirely within the discretion of the trial court upon showing of good cause by the Plaintiff. <u>Moore v. Norouzi</u>, 807 A.2d 632, 641 (Md. 2002).  Appellate courts will not disturb the trial court's determination of whether there is good cause, absent an abuse of discretion, and we find none here. <u>See, e.g.</u>, <u>White v. Prince George's County</u>, 877 A.2d 1129, 1141 (Md. Ct. Spec. App. 2005).

[2] Even if McNeal's claim for intentional infliction of emotional distress were not barred by the Statute of Limitations and the Maryland Tort Claims Act, he failed to prove the elements of that claim.  To prove intentional infliction of emotional distress, a plaintiff must show that (1) the conduct was intentional or reckless; (2) extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe.  <u>Harris v. Jones</u>, 380 A.2d 611, 614 (Md. 1977). Assuming, but not deciding, that McNeal could prove Tignor's conduct toward him was intentional and was the cause of his alleged emotional distress, he failed to prove either that the conduct was extreme and outrageous or that his emotional distress was severe.

To qualify as "extreme and outrageous," the conduct must rise above "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." <u>Harris</u>, 380 A.2d at 614.  It is clear in this case that the alleged conduct, including insults, scrutinizing McNeal's work and sick leave, relieving him of certain uncompensated responsibilities, and accusations of theft, even taken as true, does not rise to the required standard of extreme and outrageous conduct.
(Continued)

14

The district court did not err in granting summary judgment on the state law claims based on McNeal's failure to meet the Statute of Limitations and the notice provision.

B. Discrimination Claims Under Title VII and the ADEA

McNeal argues that the district court erred when it granted summary judgment to the Defendants on his claim for discrimination under Title VII, 42 U.S.C. § 2000(e) et seq. (2008), and the ADEA, 29 U.S.C. § 621 (2008). McNeal asserts that he has been discriminated against in violation of Title VII and the ADEA, on the bases of age, race and gender. He first argues that he was discriminated against in violation of Title VII when he was denied a temporary promotion in August 1999. McNeal then contends he was the victim of age, race, and gender discrimination when he was denied the permanent promotion in December 1999.

To prove that the alleged emotional distress was severe, a plaintiff must show that the distress "inflicted is so severe that no reasonable man could be expected to endure it." Harris, 380 A.2d at 616. Although McNeal claims that he suffered from anxiety and other physical symptoms like nervous scratching and an upset stomach, such allegations fall far short of establishing the recognized element of severe emotional distress.

15

1. Temporary Promotion

McNeal contends that he was discriminated against on the basis of race when his request for the temporary promotion was denied. The prima facie case for discrimination, set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), requires that a plaintiff show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Id. at 802. The district court correctly held that McNeal did not make out a prima facie case of discrimination as to the temporary promotion because McNeal applied for a position that did not exist.[3] Although McNeal belongs to a racial minority, the position he sought was not one for which the "employer was seeking applicants," since there was no such position. Nor did the "position remain[] open and the

---

[3] McNeal argues that there is a genuine dispute as to whether the Montgomery County Personnel Regulations allowed for the creation of a new position for the purposes of a temporary promotion. Even if this is true, the dispute is not material. It is irrelevant for the purposes of the prima facie case whether a position could have been created. It is only relevant whether there existed an open position, for which the employer was seeking applicants. Clearly, there was no such position in this case.

16

employer continue[] to seek applicants from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802, as the County never sought applicants for a nonexistent position.

The district court did not err in granting summary judgment as to McNeal's temporary promotion claim.

## 2. Permanent Promotion

McNeal also pled that he was discriminated against on the basis of age, race, and gender in violation of Title VII and the ADEA when he was not chosen for the permanent promotion to Manager II in November 1999. McNeal argues that the Defendants' proffered nondiscriminatory reason for not interviewing or promoting McNeal was merely pretext[4] for a discriminatory motive.

The Defendants responded that the rating system, upon which the employment decision was made, was based on a multitude of neutral factors, and that McNeal's rating was accurate based on his previous work experience. Lee was the better-qualified candidate and was appropriately chosen for the position on a

---

[4] If a prima facie case under McDonnell Douglas is made by the plaintiff, the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. If the employer does so, the burden then shifts back to the plaintiff to prove that the proffered reason is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 802-03.

nondiscriminatory basis. Specifically, the Defendants argue that Lee's application "demonstrated the ability to manage a diverse workforce and cited specifically his management philosophy for cultivating working relationships" while McNeal's resume "indicated no supervisory responsibility and [instead] indicated knowledge of contract administration processes" for at least the previous nine years. McNeal argues that his rating of "qualified" as opposed to "well-qualified" was nonetheless based on discriminatory motives, and that his previous supervisory work experience was ignored or not given the correct weight.

Even taking all of McNeal's factual claims as true, he fails to provide any evidence that a discriminatory motive underlied the raters' decisions. In arguing that he was discriminated against on the basis of race, McNeal claims that Tignor made comments about his race and looks. Even if true, McNeal has failed to temporally connect these comments with any employment decision. "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and [u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (internal quotation marks omitted) (abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)) (quoting McCarthy v. Kemper Life Ins. Co., 924

18

F.2d 683, 686 (7th Cir. 1991)). Furthermore, Wormack and Goodwin, not Tignor, were McNeal's raters and he provides no evidence of racial animus as to either of them.[5]

McNeal failed, as a matter of law, to meet his burden of proof that the rating process was pretext. In effect he has done no more than argue that he disagrees with the raters' conclusions. It was not illogical for the raters to have given more weight to Lee's recent supervisory experience when McNeal's experience was dated. Further, mere speculation by the plaintiff that the defendant had a discriminatory motive is not enough to withstand a motion for summary judgment. See Autry v. N.C. Dep't of Human Res., 820 F.2d 1384, 1386 (4th Cir. 1987). "In other words, [he] would have to show that [he] was not promoted because of [his] race, not that [he] was a member of [a protected group] and was not promoted." Id. (emphasis in original).

Nor has McNeal provided evidence sufficient to withstand a motion for summary judgment on his age discrimination claim.[6]

---

[5] Tignor's refusal to reconvene the raters after they made logical conclusions in the ratings process does not provide circumstantial evidence of discrimination. Tignor stated that she believed reconvening the raters would "taint[] the objectivity of the disclosure forms and that it would be very difficult in the future . . . to get individuals who would feel comfortable about rating people." (JA 236). Tignor's rationale is a valid nondiscriminatory reason for her decision, and McNeal failed to show the rationale was not genuine.

McNeal contends Tignor's statement to him, "Art, aren't you ready to retire?" when he informed her of his intention to apply for the permanent promotion, and the fact that the raters discounted certain of his past experience, as sufficient evidence of age discrimination. We disagree. Even taking Tignor's alleged statement as true, this is the only scintilla of evidence of age discrimination offered by McNeal.

Under Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277 (4th Cir. 2004) (en banc), a plaintiff must "'present sufficient evidence,' direct or circumstantial, 'for a reasonable jury to conclude, by a preponderance of the evidence,

_____

[6] McNeal includes individual Defendants, Tignor and Wormack, in his claim under the ADEA. However, only an employer, and not an individual employee, may be held liable under the ADEA. In Birkbeck v. Marvel Lighting Corp., 30 F.3d 507 (4th Cir. 1994), this Court held that individual defendants cannot be held liable under the ADEA for "personnel decisions of a plainly delegable character." Id. at 510 n.1. A decision is "plainly delegable" if the "employer could delegate authority to a supervisor to act as its agent" including decisions to promote, terminate, and "other normal personnel actions." Cortes v. McDonald's Corp., 955 F. Supp. 531, 537 (E.D.N.C. 1996). In this case, the issue is his rating and the decision not to promote him. This is a clearly delegable personnel decision, and thus Tignor cannot be held individually liable.
This Court has expanded this theory to Title VII cases as well, holding that individuals are also not liable for violation of Title VII as a logical extension of Birkbeck. Therefore, the district court's grant of summary judgment as to all individual federal claims against Defendants Tignor and Wormack was correct.

that race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Id. at 285 (quoting Desert Palace, 539 U.S. at 2155).

McNeal has given no direct or circumstantial evidence of discrimination that satisfies the Hill test. Other than the belief that his rating should have been higher, McNeal has offered no proof of pretext, and has not proven that he was better qualified than Lee for the permanent promotion. He has given no reason to impugn the objectivity of the two raters. Furthermore, both McNeal and Tignor were born in 1939. Courts have held that the fact that the relevant party is the same age or older than the plaintiff is circumstantial evidence against age discrimination. See Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1032 (7th Cir. 1998). Even assuming that McNeal put forth a prima facie case of discrimination, and taking as true that Tignor made the comments of which she is accused, he has not met his burden of proving that the employer's proffered nondiscriminatory reason was pretextual.[7]

---

[7] As far as his claim that he was discriminated against on the basis of gender, McNeal made no effort to provide the Court with any evidence of gender discrimination and we do not consider this claim. See Rosenberger v. Rector and Visitors of the University of Virginia, 18 F.3d 269, 276 (4th Cir. 1994), rev'd on other grounds, 515 U.S. 819 (1995).

21

### 3. Retaliation

To establish a prima facie case of retaliation under Title VII, 42 U.S.C. § 2000(e)(3) (2008), a Plaintiff must show that "(1) [he] [had] engaged in protected activity; (2) the employer took adverse employment action against [him]; and (3) a causal connection existed between the protected activity and the asserted adverse action." Lettieri v. Equant, Inc., 478 F.3d 640, 650 (4th Cir. 2007) (quoting von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001)). Here, McNeal filed a race and gender discrimination complaint on June 14, 2000, which is a protected action under Title VII. McNeal contends that the adverse employment action in this case was a "reduction in [his] job responsibilities . . . and [Tignor's] efforts to abolish his position and scrutiny of his whereabouts and sick leave." Additionally, McNeal asserts that Tignor threatened to fire anyone who went "to the union or [sought] outside assistance," which was corroborated by at least one other employee. He argues that these actions "compelled [him] to retire."

However, McNeal failed to prove two elements of the prima facie case: that there was an adverse employment action taken and that, if there were, there existed any causal connection between the protected action and the adverse action. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the

22

plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)); see e.g., Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008) (filing a lawsuit not based in fact or law constitutes an adverse action); Lettieri, 478 F.3d at 645 (terminating an employee constitutes adverse action). In this case, McNeal chose to retire; he was not fired or demoted by Tignor. Further, even if McNeal had proven that an adverse employment action had been taken, he offered no proof of causation: that the action would have been taken in retaliation, or in connection with, his protected action.

## C. Hostile Work Environment

Finally, McNeal raised a hostile work environment claim. In order to survive summary judgment on a hostile work environment claim under Title VII, 42 U.S.C. § 2000(e) et seq., a plaintiff must show that "a reasonable jury could find [the] harassment (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir. 2001). This determination may be made by looking at "all the circumstances" surrounding the alleged hostile environment, including the

23

"frequency" and "severity" of the harassing conduct, "whether [the conduct] is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). However, "Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 183 (4th Cir. 1998). "Coworkers may be 'unpleasant and sometimes cruel,'" but "[n]ot every such instance renders the workplace objectively hostile." Shaver v. Dixie Trucking Co., 181 F.3d 90, 3 (table) (4th Cir. 1999) (unpublished) (quoting Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997)).

McNeal argues that Tignor's comments about his race and appearance, combined with her scrutiny of his sick leave and accusations of theft, resulted in a hostile work environment. However, these several instances, even if true, are not sufficient proof of a hostile work environment to withstand summary judgment. First, it is not clear whether Tignor's comments, if she said them, were directed to McNeal or whether he had knowledge of them at the time. Second, the five accusations of theft and Tignor's requirement that McNeal bring in doctor's notes and provide for more detail about his sick leave hardly rise to the level of "hostile or abusive" treatment. Based on the factors put forth by the Supreme Court

24

in Harris, Tignor's alleged behavior does not meet the level of frequency, severity, physical threat, or interference with work performance required to meet the standard of "hostile or abusive."

The district court thus did not err in awarding summary judgment on McNeal's Title VII and ADEA claims.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

25